# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:17-CV-00034-JHM**

**OLIVER H. BARBER, III, on behalf of himself and two classes of similarly situated persons**    **PLAINTIFF**

**v.**

**LINCOLN NATIONAL LIFE INSURANCE COMPANY**    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Lincoln National Life Insurance Company's ("Lincoln") motion to dismiss. (DN 9.) Fully briefed, this matter is ripe for decision. For the reasons stated below, the motion is **GRANTED**.

## I. BACKGROUND

This matter arises out of a long-term disability insurance policy. Plaintiff Barber was employed as a business litigation attorney with Stites & Harbison PLLC ("Stites"). (Pl.'s Compl. [DN 1] ¶ 7.) Barber was diagnosed with Parkinson's disease in November 2014. (*Id.* ¶ 8.) Stites has a long-term disability policy with Lincoln for its employees. (*Id.* ¶ 9.) This policy is, according to Barber, an "own occupation" policy, meaning that "a beneficiary's entitlement to full disability benefits is determined not by his ability to work in *any* position, but rather by his ability to continue in his *own occupation* – in Mr. Barber's case, as a litigator." (*Id.* ¶ 11.) Due to his diagnosis, Barber applied for benefits under the policy, and his application was approved on December 14, 2015. (*Id.* ¶ 9.)

After approving his claim for benefits, Lincoln began enquiring with Barber about any other sources of income he had. (*Id.* ¶ 15.) Barber informed Lincoln that he was working as an

independent contractor for a political campaign. (*Id.* ¶ 16.) Lincoln then began reducing Barber's monthly benefit due to this other source of income. (*Id.*) Barber requested that Lincoln reverse its decision to offset his monthly benefit, and Lincoln notified Barber via an October 25, 2016 letter that it was denying his request. (*Id.* ¶ 25.) Barber then initiated the present action, asserting claims under the Employee Retirement Income Security Act of 1975 ("ERISA") for recovery of benefits owed to him (Count I) and seeking to enjoin unlawful withholding of offset benefits (Count II). He asserts these claims on behalf of himself and two classes of similarly situated persons. (*Id.* ¶ 26.) Lincoln has moved to dismiss Counts I and II pursuant to Fed. R. Civ. P. 12(b)(6), as well as Count II pursuant to Fed. R. Civ. P. 12(b)(1). (DN 9.)

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief.*"* *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79. Instead, a complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"

*Id.* at 677 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

#### A. COUNT I – DENIAL OF BENEFITS

Count I of the complaint seeks to recover benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B), that are owed to Barber under the policy. Lincoln's motion to dismiss argues that Barber has not plausibly stated a claim upon which relief may be granted, as the policy clearly entitled Lincoln to offset Barber's monthly benefit with his outside income earned as a political consultant. Because the policy permits this offset, Lincoln argues that Barber cannot plausibly show that its decision to offset his benefit was "arbitrary or capricious."[1]

The policy, which was attached to the complaint and referenced throughout, states that Lincoln "has the authority to manage this Policy, interpret its provisions, administer claims and resolve questions arising under it." (Policy [DN 1-2] at 18.) A denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

---

[1] At the outset, the Court notes that "[t]here is a degree of analytical tension between the deference to plan interpretation required by *Firestone* [*Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)] and the mandate that all facts as pled by [the plaintiff] are to be taken as true for the purposes of the motion" to dismiss pursuant to Rule 12(b)(6). *Harrison v. PNC Fin. Servs. Grp.* 928 F. Supp. 2d 934, 944 (S.D. Ohio 2013). Some courts have found the tension untenable and declined to look to the merits of the claim until an administrative record has been filed. *See id.* at 944–45. Others have applied the plausibility standard under *Iqbal* and evaluated whether the complaint plausibly alleges arbitrary and capricious decision making by the defendant. *See Estep v. United Mine Workers of Am. 1974 Pension Plan and Trust*, 2015 WL 5443865, at *2 n. 2 (E.D. Ky. Sep. 15, 2015). The latter approach has seemingly been approved by the Sixth Circuit when the complaint "fail[s] to state a plausible claim for relief." *Tate v. Gen. Motors, LLC*, 538 F. App'x 599, 603 (6th Cir. 2013.) Further, Barber has not argued that it is premature to decide the issues presented by this motion without an administrative record. Therefore, the Court will decide whether Barber's complaint plausibly alleges that Lincoln acted arbitrarily and capriciously by offsetting his benefits with other sources of income.

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants discretion to an administrator, the Court reviews the administrator's decision under the arbitrary and capricious standard. *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1247 (6th Cir. 1991). Here, the policy "express[ly]" grants Lincoln the discretionary authority to determine Barber's eligibility for benefits. *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) (citations omitted). Therefore, Count I of the complaint should be dismissed if it does not plausibly show that Lincoln's decision to offset Barber's benefits was made arbitrarily and capriciously.

The policy offers two different types of benefits: total disability benefits and partial disability benefits. When one is "totally disabled", the monthly benefit will equal "the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage . . . minus Other Income Benefits." (Policy [DN 1-2] at 24.) When one is only "partially disabled," it means that the insured employee "is engaged in Partial Disability Employment," which is defined as "working at his or her Own Occupation or any other occupation" under reduced hours, pay, or duties. (*Id.* at 10, 24.) The monthly benefit for one who is partially disabled is the lesser of either the "Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment)," or the "Insured Employee's Predisability Income multiplied by the Benefit Percentage . . . minus Other Income Benefits, except for earnings from Partial Disability Employment." (*Id.* at 28.)

Barber alleges that his income as a political consultant is not "Other Income Benefits" that can be deducted from his monthly benefit. However, "Other Income Benefits" is defined in the policy as "benefits, awards, settlements or Earnings," with Earnings defined as "pay the Insured Employee earns or receives from any occupation or form of employment," including

4

"salaried or hourly Employee's gross earnings." (*Id.* at 30.) This definition would clearly encompass any compensation Barber received from his political consulting, since that is an "occupation or form of employment." Thus, the plain text of the policy indicates that Barber's income from political consulting could be considered Other Income Benefits, which are taken into account when calculating total disability benefits, as well as one of two formulas considered when calculating partial disability benefits. Since the plain text of the policy demonstrates that Lincoln was permitted to deduct this amount from Barber's benefits, it was reasonable for it to interpret the policy in such a manner. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (requiring a court to "give effect to the unambiguous terms of an ERISA plan"). As such, Barber has not established that he is entitled to relief, since the complaint does not plausibly demonstrate that Lincoln acted arbitrarily or capriciously in deciding to offset his benefits.

Barber argues in opposition that no deference should be given to Lincoln's interpretation, as it both makes decisions on eligibility for benefits and pays out those same benefits, creating an inherent conflict of interest. However, the arbitrary and capricious standard is "not altered by the existence of [the defendant's] inherent conflict of interest created by acting as both the administrator and issuer of the Plan . . . we consider it a factor in determining whether the plan administrator's decision was arbitrary and capricious." *Tate*, 538 F. App'x at 601. *See also Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989) (possible conflict of interest only a factor in determining whether decision was arbitrary and capricious). Even considering this conflict of interest as a factor, Barber has not plausibly alleged that Lincoln's interpretation was arbitrary and capricious, as the decision to offset benefits was supported by the plain text of the policy.

Barber also argues that Lincoln's interpretation of the contract and the offsetting of his benefits frustrates the essential purpose of the policy, which, according to Barber, is "to protect earning power in a person's *own occupation*." (Pl.'s Resp. to Def.'s Mot. to Dismiss [DN 14] at 8) (emphasis in original). But this argument is without merit, as Lincoln merely applied the unambiguous terms of the policy to Barber's claim. The definition of "Earnings" clearly includes "pay the Insured Employee earns or receives from *any occupation or form of employment*." (Policy [DN 1-2] at 30) (emphasis added). It was not unreasonable to interpret that phrase as including income an individual receives for his professional services. While Barber takes issue with what he perceives as a contravention of "the fundamental bargained-for aspect of the policy," the Court cannot see what could be more fundamental to the bargain than the terms of the policy. (Pl.'s Resp. to Def.'s Mot. to Dismiss [DN 14] at 9.)

Finally, Barber argues that Lincoln's offsetting of his political consulting income from his monthly benefit "renders meaningless" many of the distinctions made in the policy between partial and total disability. But this argument fails for two reasons. First, Barber's complaint does not allege that he was improperly reclassified as having only a partial disability when he began working again. The allegations in the complaint solely pertain to the impropriety of Lincoln's reduction of his benefits without reference to which level of disability he was classified as having. And second, even if there was error in classifying Barber as having either a total or partial disability, his political consulting income would be used in calculating his monthly benefit regardless of whether he was totally or partially disabled. The formula for determining the monthly benefit for a totally disabled individual deducts Other Income Benefits, which Barber's political consulting income clearly is. (Policy [DN 1-2] at 24.) And a partially disabled individual is only entitled to the lesser of two amounts based upon different formulas,

one of which also deducts Other Income Benefits that includes income from Partial Disability Employment.[2] (*Id.* at 28.) Regardless of how Barber's disability is classified, his income from other employment matters in calculating his monthly benefit.

Lincoln's decision to reduce Barber's monthly benefit due to his political consulting income is supported by the plain text of the policy. As such, Barber does not plausibly allege that Lincoln's decision was arbitrary and capricious. Therefore, the motion to dismiss Count I is **GRANTED**. *See Estep*, 2015 WL 5443865, at *2 n. 2 (because "complaint does not plausibly allege that the Plan acted arbitrarily or capriciously," defendant is "entitled to dismissal even if this Court applied the traditional . . . 12(b)(6)" standard).

### B. COUNT II – PREMATURE OFFSETTING

Count II of the complaint asserts, pursuant to 29 U.S.C. § 1132(a)(3), that Lincoln's offsetting of Barber's monthly benefit violated the duties Lincoln owed to Barber under ERISA, as Lincoln did not wait until Barber had reported his other income for federal income tax purposes before reducing his monthly benefit. He seeks an injunction against Lincoln prohibiting it from making offsets before Barber (and all others similarly situated) reports other income for federal tax purposes, as well as restitution of all amounts that were prematurely withheld from his monthly benefit. Lincoln makes four arguments in favor of dismissal: (1) Barber has not alleged a particularized, concrete injury sufficient to confer standing upon him, (2) Barber has failed to exhaust his administrative remedies, (3) the complaint fails to plausibly

---

[2] It is also worth noting that the other formula used in calculating the partial disability benefit explicitly excludes income from Partial Disability Employment, a category which Barber's political consulting income may qualify. (Policy [DN 1-2] at 10.) The policy clearly indicates when a source of income is *not* to be considered, just as it makes clear when a source of income is to be considered, in reducing the monthly benefit. Thus, Barber's arguments that the plain text of the policy, which requires deductions for Other Income Benefits, does not actually mean what it says is unavailing.

allege a claim for relief, and (4) Barber's request for restitution is impermissible. The Court will address each in turn.

### 1. STANDING

The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In the context of an ERISA action, a plaintiff must establish a concrete and particular injury that is personal to them when bringing a claim for either monetary or injunctive relief under 29 U.S.C. § 1132(a)(3). *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 583–84 (6th Cir. 2016). "[M]erely alleging a violation of ERISA rights" is insufficient to satisfy the Article III standing requirements; there must be an injury that results from the violation. *Id.* at 582.

Lincoln argues that Barber has failed to satisfy the first element, as he has not alleged a particularized and concrete injury that would confer standing upon him. Barber argues that he has alleged two injuries that satisfy this constitutional standard: the loss of the time value of money through premature offsetting, and the loss of actual money by excessive offsetting. As to the time value of money argument, the Sixth Circuit has not addressed whether this alone is a sufficient injury to establish standing, and the circuits that have addressed the issue are split. *Compare Kawa Orthodontics, LLP v. Secretary, U.S. Dept. of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) ("Kawa's bare allegation that it has lost the 'value of the time and resources it expended in 2013' sets out an injury that is too abstract and indefinite to confer Article III standing"), *with Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010)

("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money," creating a sufficient injury for standing purposes). Before the Court can even decide whether this is a sufficient injury, though, it must determine if the complaint actually alleges this injury, as Lincoln argues that no such injury is alleged. *See Kawa*, 773 F.3d at 246 ("We may not hypothesize or speculate about the existence of an injury Kawa did not assert"). The complaint makes no particularized allegation that Barber lost the time value of money owed to him by Lincoln, beyond asking in the prayer for relief for the amounts withheld, plus interest. It may be implied by the nature of Barber's allegations that, by having benefits withheld monthly, he lost the opportunity to grow that money through investment. But the Court cannot find injury via implication, as the complaint must "particularize" an injury so as to show that it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. If all the complaint does is imply that *any* time a person is denied money he or she suffers an injury from being denied the opportunity to grow that money, then the complaint has not stated an injury with sufficient particularity.

But Barber argues that he has alleged a different injury that is sufficient to establish standing: the loss of money from *excessive* offsetting. The complaint states that "none of the amounts used for deduction had been reported for federal income tax purposes at that point (and only eventually would be reported, at a lesser amount than Lincoln used for reducing Mr. Barber's payment) . . ."[3] (Pl.'s Compl. [DN 1] ¶ 20.) This is sufficiently particular to Barber and concrete, as Barber has alleged that he was denied actual money that he was entitled to under the policy. *See Spokeo*, 136 S. Ct. at 1548 ("When we have used the adjective 'concrete,' we

---

[3] Barber argues in his brief opposing dismissal that this paragraph "is expressly incorporated into Count II[.]" (DN 14, at 14.) Count II of the complaint does not "expressly incorporate" any of the preceding paragraphs, but it is clear from the entirety of the complaint that the allegations in paragraph 20 refer to Lincoln's practice of offsetting on a monthly basis that is the focus of Count II.

have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'"). Lincoln has not argued that any injury is not traceable to its conduct or likely to be redressed by a favorable ruling, and the Court finds that both of these elements have also been met. Taking the complaint as true, it is reasonable to conclude that Lincoln's premature offsetting could have resulted in excessive amounts being excluded from Barber's monthly benefits, and a favorable judgment by this Count could remedy the situation. Thus, the complaint sufficiently alleges an injury that confers Article III standing on Barber to bring the claim.

### 2. EXHAUSTION OF REMEDIES

Next, Lincoln argues that Barber failed to adequately plead that he exhausted his administrative remedies, as is required by the Sixth Circuit for ERISA claims. *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) ("the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit . . . despite the fact that ERISA does not explicitly command exhaustion") (quotations omitted). Lincoln argues that Barber has not adequately pled that he exhausted his remedies because he has never raised the issue of the timing of the offsets until this suit. Barber argues in response that he need not exhaust his remedies since he is challenging the legality of the offsets under ERISA, rather than the policy itself, and any attempt at exhaustion would be futile.

The Sixth Circuit has recognized a narrow exception to the general rule that requires exhaustion of administrative remedies. In an ERISA case, "when the plaintiff's suit is directed to the *legality* of a plan, not to a mere *interpretation* of it, exhaustion of the plan's administrative remedies would be futile," and no exhaustion is required. *Durand v. Hanover Ins. Grp., Inc.*, 560 F.3d 436, 439–40 (6th Cir. 2009) (quoting *Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994) (emphasis in original) (brackets omitted). These claims are exempt from exhaustion

since the plan "would merely recalculate their benefits and reach the same result," as the claim questions not whether the calculation of benefits is correct but permissible. *Costantino*, 13 F.3d at 975. So long as a plaintiff is asserting "statutory violations of ERISA," he or she does not need to exhaust internal plan remedies. *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017).

Count II of Barber's complaint alleges that Lincoln's "systemic process in not requesting and using appropriate tax reporting documentation in connection with calculating benefits payments violates Defendant's duties under ERISA." (Pl.'s Compl. [DN 1] ¶ 35.) ERISA does impose certain duties on employee benefit plans, including that the fiduciary of the plan "discharge his or her duties with the care, skill, prudence, and diligence" that the circumstances require. *Hitchcock*, 851 F.3d at 565 (quoting 29 U.S.C. § 1104(a)(1)(B)). The Sixth Circuit's opinion in *Hitchcock* makes clear that no exhaustion is required for claims asserting a breach of fiduciary duty under ERISA, but it also states that "this statutory claims exception to the exhaustion requirement does not apply to plan-based claims artfully dressed in statutory clothing, such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." *Id.* The issue thus becomes whether Barber's claim for breach of fiduciary duty is nothing more than a claim alleging a breach of the terms of the policy, or whether he has actually asserted a claim for breach of fiduciary duty.

The Court concludes that Barber's claim is merely an attempt to dress up claims for violations of the policy as statutory claims under ERISA. The substance of Barber's claim is that Lincoln was not permitted to offset his monthly benefit with income he earned until that income had been reported for federal taxation purposes. There is no provision in ERISA that would require this; it could only arise from the policy itself. (*See* Policy [DN 1-2] at 30) (defining

"Earnings" as pay the Insured Employee earns "as reported for federal income tax purposes . . . includ[ing] . . . salaried or hourly Employee's gross earnings (shown on Form W-2")). Barber does not point to how this caused Lincoln to breach its fiduciary duty with any specificity beyond stating that it breached its duty by breaching the policy.

The complaint itself tends to show that Barber is simply couching his policy-based complaint in fiduciary duty terms, as the paragraph that details how Lincoln prematurely applies offsets to Barber's benefits concludes by stating, "Lincoln flagrantly *breaches the contract* and its fiduciary duties in administering the contract." (Pl.'s Compl. [DN 1] ¶ 20) (emphasis added). The complaint treats the two as one in the same, making no meaningful distinction between what duty Lincoln owes Barber under the policy and what duty it owes Barber under ERISA's fiduciary duty requirements. This is the situation envisioned in *Hitchcock* where a claim is presented in the language of a fiduciary duty claim but in essence is nothing more than a claim under the terms of the policy. Barber's allegations are simply that Lincoln breached the policy by withholding benefits based on other income before that income was reported for tax purposes; this may be sufficient to state a claim for denial of benefits, but it does not state a claim for breach of the fiduciary duty owed to Barber under ERISA. To conclude otherwise would do away with the distinction between policy-based claims, which do require exhaustion, and statutory claims, which do not, since Barber would be permitted to reframe any instance where Lincoln's interpretation of the policy is contrary to his understanding of it as a breach of Lincoln's fiduciary duty and avoid any exhaustion requirements. *Accord Stacy v. Appalachian Regional Healthcare, Inc.*, 2017 WL 1381660, at *4 (E.D. Ky. Apr. 17, 2017).

Because the claim is policy-based as opposed to statutory-based, exhaustion of administrative remedies is required. It is uncontested that Barber has not done this. Therefore,

the motion to dismiss Count II is **GRANTED**. Lincoln argues that the time for administrative review of the claim (180 days) has now closed, and the claim should be dismissed with prejudice, since it will now be impossible for Barber to exhaust his remedies. Barber does not respond to this argument. The policy does state that requests for review of denied claims must be brought within 180 days of receipt of the denial. (Policy [DN 1-2] at 17.) Therefore, Count II is **DISMISSED WITH PREJUDICE**.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion to Dismiss is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 15, 2017

cc: counsel of record